IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LYNN R. ZWYGART,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | No. 06-2038-CM |
| ) | |
| **BOARD OF COUNTY COMMISSIONERS** ) | |
| **OF JEFFERSON COUNTY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Lynn R. Zwygart brings this disability discrimination suit against defendant, Board of County Commissioners of Jefferson County. The case is before the court on defendant's Motion for Summary Judgment (Doc. 21). Defendant's motion is granted in part and denied in part.

**I.   Factual Background**

A significant portion of the relevant facts are presented in *Zwygart v. Board of County Commissioners of Jefferson County, Kansas*, 483 F.3d 1086, 1088–90 (10th Cir. 2007) ("*Zwygart I*"). Plaintiff filed *Zwygart I* on February 1, 2005. On June 9, 2005, defendant advertised a road maintenance position. Plaintiff applied for the position. George Pogge, the superintendent in charge of hiring for the position, did not select plaintiff.

According to evidence submitted by plaintiff, Mr. Pogge discussed hiring plaintiff with Richard Teaford. During this conversation, the two discussed plaintiff's "leave problem." The parties debate the full implications of plaintiff's "leave problem"; however, the "leave problem" is generally related to *Zwygart I*. Additionally, plaintiff stresses a conversation between himself and

Mr. Pogge during which Mr. Pogge asked plaintiff for a doctor's release and mentioned the possibility of other positions becoming available.

## II.     Procedural Background

The parties initially completed briefing the present motion on January 29, 2007. Plaintiff requested leave to file a surreply, which this court conditionally granted.[1] On April 24, 2007, the Tenth Circuit filed the referenced opinion in *Zwygart I*. Because this court believed the Tenth Circuit opinion would affect analysis of the present motion, the court ordered the parties to provide additional briefing on the present motion.

## III.    STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## IV.     DISCUSSION

Plaintiff brings two claims against defendant: (1) failure to hire in violation of the Americans with Disabilities Act ("ADA"); and (2) retaliation in violation of the ADA. Defendant argues that it is entitled to summary judgment on both claims.

### A.     Failure to Hire

For plaintiff to avoid summary judgment on his failure to hire claim, he must first

---

[1] The court has considered the relevant arguments where appropriate.

establish—as part of his prima facie case—that he qualifies as an individual with a disability under the ADA. *LeVelle v. Penske Logistics*, 197 F. App'x 729, 734–35 (10th Cir. 2006). While the ADA lists three definitions of disability, plaintiff's Supplemental Brief in Opposition to Motion for Summary Judgment (Doc. 34) concedes that the only applicable definition is "being regarded as having such an impairment." Plaintiff also concedes that the only available option for meeting the "regarded as" definition is by showing that defendant mistakenly regarded plaintiff as having a substantially limiting impairment. *See Berry v. T-Mobile USA, Inc.*, No. 05-1533, 2007 WL 1830755, at *6 (10th Cir. June 27, 2007) (listing "the individual may have no impairment at all but is regarded by the defendant as having a substantially limiting impairment" as one of three alternatives under the "regarded as" definition).

Specifically, plaintiff contends that defendant regarded plaintiff as having an impairment that substantially limited the major life activity of working. To show a limitation of the major life activity of working requires more than an inability to perform a particular job. *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."). Instead, plaintiff must show that defendant thought he was disabled, and that defendant believed that the disability "would prevent him from performing a broad class of jobs." *Id.* (citing *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001)). As a result, the Tenth Circuit clarified that "for an employee to prevail on a 'regarded as' claim with respect to the major life activity of working, there must be sufficient evidence that the employer *subjectively* believed the employee to be significantly restricted as to a class of jobs or broad range of jobs in various classes." *Id.* at 1163 (emphasis in original).

Here, defendant argues that no fact in the record suggests that it believed plaintiff was unable

to work in other positions. Plaintiff responds that a genuine issue as to material fact exists because of "two pieces of evidence." First, plaintiff contends that Mr. Teaford's testimony during a deposition states that plaintiff was not hired because of his "leave problem." Second, plaintiff points to a conversation between Mr. Pogge and plaintiff during which Mr. Pogge told plaintiff he was concerned about plaintiff's health and asked for a doctor's release. Plaintiff does not elaborate as to how these statements indicate defendant mistakenly believed that a disability would prevent plaintiff from performing a broad class of jobs.

While the court makes reasonable inferences in favor of plaintiff, unreasonable inferences are needed to bridge from the given statement about a "leave problem" to the conclusion that defendant believed plaintiff had a disability that barred him from a class of jobs. First, the court must infer that defendant considered the "leave problem" to mean more than plaintiff's frequent use of sick leave, and instead referred to a substantially limiting impairment. Second, the court must infer that this substantially limiting impairment would also prevent plaintiff from a broad class of jobs. These inferences are unreasonable because of the testimony surrounding the "leave problem" statement. Before the "leave problem" statement, there was a detailed discussion of plaintiff's sick leave history. The Tenth Circuit has noted that sick leave, even for a "serious health condition" under the Family Medical Leave Act, does not create a question of fact on whether a person was regarded as disabled. *Berry*, 2007 WL 1830775, at *7 (citing *Ellis v. Mohenis Servs., Inc.*, No. 96-6307, 1998 WL 564478, at *5 (E.D. Penn. Aug. 24, 1998) ("[w]hether the defendants believed the plaintiff was eligible for FMLA leave, or believed the taking of such leave was proper under the circumstances, does not demonstrate that they regarded him as disabled")). After the "leave problem" statement, the submitted excerpt of the deposition ends in the middle of a sentence that impacts the necessary inferences. As provided, the "leave problem" testimony reads:

-4-

> A: [Mr. Pogge asked Mr. Teaford if they should hire plaintiff back]
> Q: And what did you tell him?
> A: I said well, he was terminated for reasons and I don't imagine—I don't have the say on it though, he does.
> Q: But he was seeking your advice?
> A: Not really.  He didn't want to hire him in either because he knew about the reasons.
> Q: And those reasons were what, the sick leave problem?
> A: Well, the leave problem and just generally a build up and using sick leave every month.
> Q: He was aware he had been on sick leave for a long period of time—
> A: Well—
> Q: —that is for his heart problem?
> A: I can't say George knew exactly
>
> Teaford Dep. 184:7–25, Sep. 29, 2005.

Because the excerpt submitted to the court ends without clarifying exactly what Mr. Pogge knew about plaintiff's condition, it is unreasonable to infer that this statement implied defendant believed that plaintiff had an impairment that barred him from a broad class of jobs.

Similarly, the court would have to make several inferences to bridge plaintiff's testimony about Mr. Pogge's request for an additional doctor's release to the conclusion that defendant believed plaintiff's impairment barred him from a broad class of jobs.  First, the court notes that requesting a doctor's release does not directly imply that defendant believed plaintiff could not perform a broad class of jobs.  *See Conrad v. Bd. of Johnson County Comm'rs*, 237 F. Supp. 2d 1204, 1237–38 (D. Kan. 2002) ("It is well settled that an EAP referral or a fitness for duty evaluation which complies with the ADA's requirements for physical/mental examinations is insufficient to demonstrate that an employer 'regarded' the employee as disabled.").  Second, the context of the request for the doctor's release makes the requisite inferences unreasonable. Immediately after mentioning the request, plaintiff said, "I did ask him about a mowing job, and he said—I believe he said that right then there wasn't, but he thought by the end of the year there might

-5-

be two openings for a mower . . . ." Mentioning the possibility of other similar jobs to plaintiff contradicts any implications that defendant believed plaintiff had an impairment that barred him from a broad class of jobs. *See Boldridge v. Tyson Foods, Inc.*, No. 05-4055-SAC, 2007 WL 846517, at *6 (D. Kan. Mar. 20, 2007) (noting an employer's statement that it will keep an application active and contact an applicant if another appropriate position becomes available is evidence that the employer does not regard an applicant as substantially limited in his ability to work).

Because there is not sufficient evidence that defendant *subjectively* believed plaintiff to be significantly restricted as to a class of jobs or broad range of jobs, plaintiff cannot establish that defendant regarded him as disabled under the ADA. Thus, plaintiff cannot make a prima facie showing of discrimination under the ADA. Defendant's motion for summary judgment on plaintiff's failure to hire claim is granted.

**B.     Retaliation**

To establish a prima facie case of retaliation under the ADA, plaintiff must show: "(1) that the plaintiff engaged in activity protected by the statute; (2) that the [plaintiff] was subjected to adverse employment action contemporaneous with or subsequent to the protected activity; and (3) that there was a causal connection between the protected activity and the adverse action." *Ryan v. Shawnee Mission Unified Sch. Dist. No. 512*, 437 F. Supp. 2d 1233, 1256 (D. Kan. 2006). Here, defendant concedes that plaintiff has met the first two elements. Thus, the parties only debate whether there was a causal connection between plaintiff's filing of his prior case and defendant's failure to hire plaintiff

"A causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."

*Ryan*, 437 F. Supp. 2d at 1258. However, unless the temporal proximity between the protected activity and the allegedly retaliatory conduct is very close, the plaintiff must provide additional evidence to establish causation. *Roberts v. Cessna Aircraft Co.*, No. 05-1325-MLB, 2007 WL 1100206, at *7 (D. Kan. Apr. 11, 2007). In *Anderson v. Coors Brewing Co.*, the Tenth Circuit compared two time ranges, noting that a one and one-half month time period between the protected activity and the adverse action may establish causation, but that a three month period is insufficient to establish causation. 181 F.3d 1171, 1179 (10th Cir. 1999). Moreover, plaintiff must have evidence of the acting party's knowledge of the protected activity prior to the adverse action. *Hinson v. U.S.D. No. 500*, 187 F. Supp. 2d 1297, 1311 (D. Kan. 2002) ("Evidence of the acting party's knowledge is essential to establishing a causal connection between the adverse action and the protected activity.").

The facts related to when Mr. Pogge learned of plaintiff's protected activity are controverted and must be decided by the trier of fact at trial. Similarly, while defendant has offered several legitimate nondiscriminatory reasons for not hiring plaintiff, plaintiff has established questions of fact of whether these reasons are pretextual. Summary judgment is denied on plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 21) is granted in part and denied in part.

Dated this 26th day of July 2007, at Kansas City, Kansas.

**s./ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**
